

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARDINAL HEALTH 110, LLC<br>Plaintiff,<br><br>v.<br><br>HEALTHWEST PHARMACY PLLC;<br>ADRIAN WEBSTER-HART; and<br>CONDILE SYLVESTER<br>Defendants, | Case No. 3:21-CV-2062<br><br>Judge: |

### DEFENDANT'S ORIGINAL ANSWER RESPONSE TO MOTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Condile Sylvester, Defendant, herein and files this Motion to Dismiss under Rule 12(b)(6) and states as follows:

### GENERAL DENIAL

I.

Defendant denies each and every allegation of Plaintiff's Original Petition, and demands strict proof thereof as required by the Texas Rules of Civil Procedure.

II.

Defendant specially denies she is liable individually for the amount sued. Defendant would show that she sold the business known as Healthcare Pharmacy on February 8, 2021, and a specific provision left debts to Cardinal Health, LLC, only.

III.

Defendant cannot be sued individually as she was an officer/ owner of Healthcare Pharmacy, LLC and has no liability as an individual, in the capacity sued.

**WHEREFORE**, Defendant prays she be dismissed with prejudice from the cause of action.

Respectfully submitted

By: _____  10/26/2021
Condile Sylvester

# Surrender/Transfer Ownership Agreement

This Surrender/Transfer Agreement is entered into as of this February 08, 2021, by and among HEALTHFIRST PHARMACY, located at 424 E PLEASANT RUN RD, DESOTO, Texas, 75115 (the "Corporation"), and CONDILE SYLVESTER of 2008 S BRANCH, ARLINGTON, Texas, 76001 (the "Surrender").

WHEREAS, Surrender owns 50% of ownership of the Corporation (the "Interest") and the Corporation is willing to assume the ownership (as defined below) upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, the Surrender and the Corporation agree as follows:

## SURRENDER/TRANSFER

a. Surrender and transfer of ownership and company interest
On the terms and subject to the conditions set forth in this Agreement, the Corporation agrees to assume from the Surrender and the Surrender agrees to, transfer, convey and deliver to the Corporation his/her 50% of Common Interest of the Corporation. The remaining owner, Adrian Webster will accept any and all responsibilities of all aspects of the Corporation from this day forth.

b. Upon acceptance of this AGREEMENT, the Surrender irrevocably appoints any officer, employee or agent of the Corporation as his/her attorney to cancel or transfer the Interest on the books of the Corporation with full power of substitution. With the surrender of 50% ownership the Surrender will be clear and free of any obligations to any liens, credit card debt, or outstanding debt of any kind included but not limited to: outstanding vendor debt (ANDA, CARDINAL HEALTH (which has approx. $115K past due debt), outstanding credit card debt (approx.$30K), or any and all other debt accrued by the Corporation during the Surrenders ownership. After the surrender/transfer of all ownership to the Corporation and remaining owner(s), this will release the Surrender from any and all liability pertaining to the Corporation: past, present, or future. Upon surrender/transfer of ownership the Surrender will surrender and return any and all credit cards and property to the Corporation included but not limited to: keys, credit cards, etc. Upon surrender/transfer of ownership the Surrender will have no more ties/obligations/relationship as an owner nor have any interest in ownership with the Corporation.

## REPRESENTATIONS AND WARRANTIES

### Representations and Warranties of the Surrender
The Surrender represents and warrants to the Corporation as follows:

a. Power and Authority
The Surrender has the power and authority to execute and deliver this Agreement and consummate the transactions contemplated hereby.

b. Validity and Enforceability

This Agreement and all other instruments or documents executed by the Surrender in connection herewith have been duly executed by the Surrender, and constitute legal, valid and binding obligations of the Surrender, enforceable in accordance with their respective terms.

c. No Encumbrances

The Surrender is the owner of record of all right, title and interest (legal and beneficial), free and clear of all liens, in and to the ownership interest. Upon delivery of documents representing the ownership to be surrendered/transferred by the Surrender to the Corporation hereunder and any payment therefor pursuant to this Agreement, good, valid and marketable title to such Interest, free and clear of all liens, encumbrances, equities, claims, liabilities or obligations, whether absolute, accrued, contingent or otherwise, will be transferred to the Corporation.

d. Knowledge and Access

The Surrender has such knowledge and experience in financial and business matters and has been furnished access to such information and documents concerning the Corporation that it is capable of evaluating the merits and risks of accepting the Surrender/Transfer in exchange for the Interest and the other terms and conditions of this Agreement. The Surrender has had an opportunity to ask questions and receive answers concerning the terms and conditions of this surrender/transfer and to obtain additional information regarding the Corporation's plans and future prospects.

**Representations and Warranties of the Corporation**

The Corporation represents and warrants to the Surrender as follows:

a. Power and Authority

The Corporation has the power and authority to execute and deliver this Agreement and consummate the transactions contemplated hereby.

b. Organization and Qualification

The Corporation is incorporated, duly organized, validly existing and in good standing under the laws of the State of Texas.

c. Validity and Enforceability

This Agreement and all other instruments or documents executed by the Corporation in connection herewith have been duly executed by the Corporation, and constitute legal, valid and binding obligations of the Corporation, enforceable in accordance with their respective terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and general principles of equity (whether considered in an action at law or in equity). The terms of this Agreement and the underlying transaction comply with all applicable laws of the United States of America and of any applicable state thereof and no consent, approval, order or authorization of, or registration, qualifications, designation, declaration or filing with, any federal, state or

local governmental authority on the part of the Corporation is required in connection with the consummation of the surrender/transfer of ownership/interest contemplated by this Agreement.

**MISCELLANEOUS**

**Notices**
Any notice or communication required or permitted under this Agreement shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the addresses listed above or to such other address as one party may have furnished to the other in writing. The notice shall be deemed received when delivered or signed for, or on the third day after mailing if not signed for.

**Successors and Assigns**
This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective permitted successors and assigns.

**Entire Agreement**
This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement, and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.

**Amendment**
This Agreement may be modified or amended if the amendment is made in writing and signed by both parties.

**Severability**
If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**Governing Law**
This Agreement shall be governed by and construed in accordance with the internal laws of the Texas.

**Signatures**
This Agreement shall be signed by the Surrender, CONDILE SYLVESTER, and by ADRIAN WEBSTER, OWNER of HEALTHFIRST PHARMACY.

**Counterparts**
This Agreement may be executed in separate counterparts, either of which, when so executed, shall be deemed to be an original and both of which, when taken together, shall constitute but one and the same agreement.

**Survival**

The representations, warranties, covenants and agreements made herein shall survive the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, notwithstanding any investigation made by either party.

**Further Assurances**

Each party shall at any time and from time to time after the date hereof take whatever actions the other party or its affiliates or agents reasonably request to effectuate, record, evidence or perfect its transfer of the Interest to the Corporation pursuant to this Agreement or to otherwise effectuate or consummate any of the transactions contemplated hereby.

Surrender:

By: _[signature]_   Date: 02-12-2021
CONDILE SYLVESTER

CORPORATION:

By: _[signature]_   Date: 02-12-2021
HEALTHFIRST PHARMACY
By ADRIAN WEBSTER, OWNER

IN WITNESS WHEREOF _Condile Sylvester / Adrian Webster_ have hereunto set _her_ hand(s) and seal(s) this _12th_ day of _February_, 2021

SIGNED, SEALED AND READ IN THE PRESENCE OF

Witness _Ramonia Stelant_   _[signature]_
                              X Condile Sylvester

Address _____

Witness _Ramonia Stelant_   _[signature]_
                              X Adrian Webster

Address _____

SWORN to and subscribed before me this _12_ day of _February_, 20 _21_

_[signature]_
Notary Public
MY COMMISION EXPIRES: September 29, 2021

JERIL ROBINSON
Notary ID #131299511
My Commission Expires
September 29, 2021

## *INDEPENDENT CONTRACTOR AGREEMENT*

This Independent Contractor Agreement (this "Agreement") is made effective as of February 08, 2021, by and between HEALTHFIRST PHARMACY (the "Recipient"), of 424 E PLEASANT RUN RD, DESOTO, Texas 75115, and CONDILE J. SYLVESTER (the "Contractor"), of 2008 S. BRANCH, ARLINGTON, Texas 76001. In this Agreement, the party who is contracting to receive the services shall be referred to as "Recipient", and the party who will be providing the services shall be referred to as "Contractor."

**1. DESCRIPTION OF SERVICES.** Beginning on February 08, 2021, the Contractor will provide the following services (collectively, the "Services"):

Providing any and all non-sterile compounding duties included but not limited to: verifying compounds, adding new compounds to data system, making compounds, packaging compounds according to all pharmacy practice standard.

**2. PAYMENT FOR SERVICES.** The Recipient will pay compensation to the Contractor for the Services in the amount of $4,800.00. Payments will be made as follows:

Milestone and Payment Amount
START OF JOB
$1,600.00

March 1, 2021
$1,600.00

March 30, 2021
$1,600.00

No other fees and/or expenses will be paid to the Contractor, unless such fees and/or expenses have been approved in advance by the appropriate executive on behalf of the Recipient in writing. The Contractor shall be solely responsible for any and all taxes, Social Security contributions or payments, disability insurance, unemployment taxes, and other payroll type taxes applicable to such compensation.

**3. TERM/TERMINATION.** This Agreement shall terminate automatically on April 01, 2021.

A regular, ongoing relationship of indefinite term is not contemplated. The Recipient has no right to assign services to the Contractor other than as specifically contemplated by this Agreement. However, the parties may mutually agree that the Contractor shall perform other services for the Recipient, pursuant to the terms of this Agreement.

**4. RELATIONSHIP OF PARTIES.** It is understood by the parties that the Contractor is an independent contractor with respect to the Recipient, and not an employee of the Recipient. The Recipient will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of the Contractor.

It is contemplated that the relationship between the Contractor and the Recipient shall be a non-exclusive one. The Contractor also performs services for other organizations and/or individuals. The Recipient has no right to further inquire into the Contractor's other activities.

**5. RECIPIENT'S CONTROL.** The Recipient has no right or power to control or otherwise interfere with the Contractor's mode of effecting performance under this Agreement. The Recipient's only concern is the

result of the Contractor's work, and not the means of accomplishing it. Except in extraordinary circumstances and when necessary, the Contractor shall perform the Services without direct supervision by the Recipient.

**6. PROFESSIONAL CAPACITY.** The Contractor is a professional who uses his or her own professional and business methods to perform services. The Contractor has not and will not receive training from the Recipient regarding how to perform the Services.

**7. PERSONAL SERVICES NOT REQUIRED.** The Contractor is not required to render the Services personally and may employ others to perform the Services on behalf of the Recipient without the Recipient's knowledge or consent. If the Contractor has assistants, it is the Contractor's responsibility to hire them and to provide materials for them.

**8. NO LOCATION ON PREMISES.** The Contractor has no desk or other equipment either located at or furnished by the Recipient. Except to the extent that the Contractor works in a territory as defined by the Recipient, his or her services are not integrated into the mainstream of the Recipient's business.

**9. NO SET WORK HOURS.** The Contractor has no set hours of work. There is no requirement that the Contractor work full time or otherwise account for work hours.

**10. EXPENSES PAID BY CONTRACTOR.** The Contractor's business and travel expenses are to be paid by the Contractor and not by the Recipient.

**11. CONFIDENTIALITY.** Contractor may have had access to proprietary, private and/or otherwise confidential information ("Confidential Information") of the Recipient. Confidential Information shall mean all non-public information which constitutes, relates or refers to the operation of the business of the Recipient, including without limitation, all financial, investment, operational, personnel, sales, marketing, managerial and statistical information of the Recipient, and any and all trade secrets, customer lists, or pricing information of the Recipient. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential. The Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor, or divulge, disclose, or communicate in any manner any Confidential Information. The Contractor will protect such information and treat the Confidential Information as strictly confidential. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, the Contractor will return to the Recipient all Confidential Information, whether physical or electronic, and other items that were used, created, or controlled by the Contractor during the term of this Agreement.

This Agreement is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed in a lawsuit if made under seal.

**12. NO RIGHT TO ACT AS AGENT.** An "employer-employee" or "principal-agent" relationship is not created merely because (1) the Recipient has or retains the right to supervise or inspect the work as it progresses in order to ensure compliance with the terms of the contract or (2) the Recipient has or retains the right to stop work done improperly. The Contractor has no right to act as an agent for the Recipient and has an obligation to notify any involved parties that it is not an agent of the Recipient.

**13. ENTIRE AGREEMENT.** This Agreement constitutes the entire contract between the parties. All terms and conditions contained in any other writings previously executed by the parties regarding the matters contemplated herein shall be deemed to be merged herein and superseded hereby. No modification of this Agreement shall be deemed effective unless in writing and signed by the parties hereto.

**14. WAIVER OF BREACH.** The waiver by the Recipient of a breach of any provision of this Agreement by Contractor shall not operate or be construed as a waiver of any subsequent breach by Contractor.

**15. SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**16. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Texas.

**17. SIGNATORIES.** This Agreement shall be signed by ADRIAN WEBSTER, Owner on behalf of HEALTHFIRST PHARMACY and by CONDILE J. SYLVESTER. This Agreement is effective as of the date first above written.

RECIPIENT:
HEALTHFIRST PHARMACY

By: _____  Date: 02-12-2021
ADRIAN WEBSTER
Owner


CONTRACTOR:
CONDILE J. SYLVESTER

By: _____  Date: 02-12-2021

February 08, 2021

CONDILE J. SYLVESTER
2008 S BRANCH
ARLINGTON, Texas 76001

HEALTHFIRST PHARMACY
424 E PLEASANT RUN RD
DESOTO, Texas 75115

RE: Resignation

To HEALTHFIRST PHARMACY and its Directors and Officers,

With this letter, I hereby submit my resignation as a STAFF PHARMACIST of HEALTHFIRST PHARMACY effective as of February 08, 2021.

I am thankful for the opportunity to serve as STAFF PHARMACIST of HEALTHFIRST PHARMACY for the past 8 years, and I offer my best wishes for its continued success.

Sincerely,

CONDILE J. SYLVESTER

CC:
ADRIAN WEBSTER